```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

**BENJAMIN D. GOLDBERG,**

      **Plaintiff,**

    v.                                  Case No. 2:10-cv-553
                                        JUDGE GREGORY L. FROST
**MICHAEL J. ASTRUE,**                  Magistrate Judge Kemp
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Benjamin D. Goldberg, filed this action seeking review of a final decision of the Commissioner of Social Security denying his application for social security disability benefits. This case is before the Court for consideration of Plaintiff's objections (ECF No. 21) to the Report and Recommendation of the Magistrate Judge that was filed on August 1, 2011 (ECF No. 20). The Magistrate Judge recommended that the Court overrule Plaintiff's statement of errors, affirm the Commissioner's finding that Plaintiff was not disabled, and enter judgment in favor of Defendant. For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the Magistrate Judge's Report and Recommendation, **OVERRULES** Plaintiff's statement of errors, and **DIRECTS** the Clerk to enter judgment in favor of Defendant.

**I.**

Plaintiff makes one objection to Report and Recommendation's summary of the medical evidence and the testimony presented at the administrative hearing. He argues that the statement found on page 8 of the Report and Recommendation, where the Magistrate Judge is describing the report of Dr. Keown, is inaccurate because the Report and Recommendation said that Dr. Keown had

concluded that Plaintiff could "probably work only a few hours a day in a low demand, low stress, low production quota job," but Dr. Keown's report actually states that "I would expect that [Dr. Goldberg] could do some part time employment, perhaps only a couple hours a day, in which he would be involved with low stress, low demand, and low production expectation."  The difference between the phrase "a couple of" used by Dr. Keown and the word "few" used in the Report and Recommendation is significant, according to Plaintiff, because someone who can work only a couple of hours a day is not capable of performing substantial gainful employment, whereas someone who could work a few hours a day might be able to do that.

  The Court sees no need to make such a fine distinction, if, indeed, there is a distinction to be made here.  <u>See, e.g.</u>, <u>Merriam-Webster Online Dictionary</u> (listing "few" as a synonym of "couple").  As the Court discusses below, this finding did not form the basis of the Magistrate Judge's conclusion (or the ALJ's) that Plaintiff was not disabled, but was one of a number of factors taken into account.  Both the ALJ and the Magistrate Judge were aware of the content of Dr. Keown's report and his conclusions, and the semantic difference, if any, between the phrase "a couple of" and the word "few" is of no significance to the Court's ultimate decision.

  As to the balance of the summary of the testimony and medical evidence, because neither party has objected to it, the Court adopts that summary and repeats here only those facts relevant to the resolution of Plaintiff's objections.

  Plaintiff is a medical doctor and was 46 years old on his last insured date, which was December 31, 1995.  He stopped working in 1992 as a result of an accidental skull fracture.  He claimed that loss of memory, inability to concentrate, and irritability with people, all caused by the accident, prevented

him from working.

Plaintiff was hospitalized on March 27, 1992 after his accident (a fall in his kitchen). The treating doctors diagnosed a skull fracture but did not see any intracranial bleeding. After four days, Plaintiff was transferred to a drug rehabilitation program, although he adamantly denies that he had a drug problem. Sometime after that, he began treatment with a Dr. Williams. Although there are no contemporaneous treatment notes in the record (they had apparently been destroyed), Dr. Williams did certify to Plaintiff's private disability insurer that Plaintiff was disabled, and he wrote a report in 2006 attributing this disability to major depression and chemical dependency in remission. Dr. Williams also told the insurer that after the accident, Plaintiff developed panic attacks, had a short attention span, was unable to concentrate or to be around people, generally distrusted people, and could not sit or stand for very long at any fixed position. A later treating source, Dennis Maceiko, a psychologist, also certified Plaintiff's inability to do a number of work-related activities, but Plaintiff did not start seeing Mr. Maceiko until 2001.

The disability insurer, Monarch Life Insurance Company, had Plaintiff examined by its own expert, Dr. Keown. He wrote a lengthy report following an examination that took place on February 8, 1993. It was in that report that Dr. Keown stated Plaintiff could work "a couple of hours" a day at a job such as reviewing medical records. Dr. Keown also reported that Plaintiff was mildly to moderately depressed (but he could not determine the actual extent of depression because Plaintiff refused psychological testing), that he was guarded and hostile during the examination, and that he was poorly motivated to deal with his depression.

The only evaluation done at the request of the Social

Security Administration took place in 2008, sixteen years after the accident, but it should be noted that Plaintiff did not apply for social security disability benefits until 2005.  Mr. Bousquet, who did the evaluation, concluded that as of that date, Plaintiff had a moderate impairment in his ability to relate to others, a mild impairment in his ability to understand, follow, and remember simple instructions, a moderate impairment in his persistence and pace, and a moderate impairment in his ability to deal with the stress and pressure of daily work.  However, he was not impaired in his ability to maintain concentration and attention for simple repetitive tasks.

There were two administrative hearings held in this case.  At the second hearing, the ALJ asked a vocational expert a series of questions relating to a hypothetical person who was limited to following simple instructions and to doing routine, repetitive work at the unskilled level, who could have only limited contact with the public or coworkers, and who could not be in a situation where intense concentration was required.  The VE testified that such a person could do a number of medium, light and sedentary jobs such as dry cleaner helper, machine presser, microfilm monitor, folding machine operator, laminator, and copy examiner.  A number of these jobs could be done with a sit/stand option.

In the administrative decision, the ALJ found that Plaintiff had severe impairments including closed head injury with residuals, depression, opiate abuse, and medullary sponge kidney disease, and a number of nonsevere impairments by history including gout, arthritis, flat feet, back pain, diminished sensation in the right finger, and a pre-diabetic condition, and that these impairments limited him in the way described to the VE in the hypothetical questions.  Because the VE identified jobs such a person could do, the ALJ denied benefits.  The Magistrate Judge has now recommended that the Court affirm that decision.

Plaintiff objects to a number of aspects of the Report and Recommendation. He contends, contrary to the Magistrate Judge's conclusion, that (1) the opinion of Dr. Williams was not properly rejected; (2) that the absence of contemporaneous treatment records does not support the ALJ's rejection of Dr. Williams' opinion; (3) that Mr. Bousquet's findings did not provide an adequate basis for rejecting Dr. Williams' opinion; (4) that the record showed that Plaintiff could not do the physical demands of light or sedentary work from 1992 to 1995; (5) that a 2008 MRI confirmed the severity of the 1992 injury and its debilitating nature; and (6) that the ALJ's finding that Plaintiff could do substantial gainful activity is not supported by substantial evidence.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.

Although Plaintiff makes six separate objections to the legal analysis contained in the Report and Recommendation, all of them except his argument about the 2008 MRI relate to a single issue: did the ALJ have a reasonable basis for discounting or rejecting the opinion of Dr. Williams, the only treating source who saw Plaintiff prior to his last insured date and who concluded that Plaintiff was disabled? If so, the Court is required to affirm the ALJ's decision.

The Magistrate Judge stated the applicable legal standard in this way:

> It has long been the case that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. See 20 C.F.R. §404.1527; Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. Rather, the weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R.

> §404.1527(d); Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).
>
> Further, as explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule." Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight. Two reasons underlie this procedural requirement. First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled. Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way. Id.

Report and Recommendation, ECF No. 20, at 11-12; *see also Compston v. Astrue,* No. 2:10-cv-818, 2011 WL 4360097, at *3 (S.D. Ohio Sept. 19, 2011)(Frost, J.). Plaintiff does not argue that this statement of the law is inaccurate, but only that the ALJ's decision cannot be sustained under this standard.

The ALJ gave a number of reasons for rejecting Dr. Williams' opinion. Although he determined that Plaintiff was disabled from a psychological point of view, Dr. Williams is not a psychologist or psychiatrist (and, as Plaintiff himself points out, Dr. Williams was Plaintiff's long-time friend). The ALJ also expressed some doubt that in 2006, when he wrote his report, Dr. Williams could recall Plaintiff's condition from 1992 to 1995

-7-

with such specificity in the absence of any contemporaneous notes.  She relied to some extent on Mr. Bousquet's examination, which, although it was not done by a treating source, was some evidence that even sixteen years after the accident Plaintiff had the ability to perform simple repetitive tasks in a low-stress environment.  Additionally, the ALJ relied on hospital notes showing that Plaintiff was "neurologically okay" and on Dr. Keown's contemporaneously-expressed view that Plaintiff could have done skilled work on a part-time basis.  Dr. Keown also reported that, in 1993, Plaintiff was alert, fully oriented, and coherent, although guarded and hostile.  Finally, she noted that there was evidence that other doctors would not certify Plaintiff as disabled to his insurer, and that also was reflective of his condition between 1992 and 1995.

These are all permissible reasons for discounting the opinion of a treating source.  Plaintiff's argument is not so much that the ALJ was legally precluded from considering such information, but that she reached the wrong conclusion after doing so.  Generally, however, it is not the Court's job to second-guess the way in which an ALJ weighs the evidence if it is susceptible to different reasonable interpretations and the ALJ has chosen one of those.

As the Report and Recommendation observed,

> The standard of review under which the Court operates in this type of case "'allows considerable latitude to administrative decision makers.  It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc), quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir.1984).

Report and Recommendation, at 13.  This Court agrees.

-8-

Plaintiff's other objection deals with the 2008 MRI. As he did in his statement of errors, he argues that this test showed that he really did experience significant cognitive and personality changes after the 1992 accident and that it provides a physiological explanation for those changes.  He continues to argue that it is consistent with some of the observations made by hospital personnel in the first few days after the accident.

Again, it was up to the ALJ to decide what weight to give this test, which was performed sixteen years after the accident in question.  Plaintiff's argument appears to gloss over the fact that other portions of the contemporaneous hospital notes showed that Plaintiff's symptoms resolved rather quickly and that he was really in need of substance abuse treatment rather than continued hospitalization to treat the effects of a brain injury.  The ALJ did not ignore the 2008 MRI, but weighed it in light of all of the record evidence, as she was required to do.  The Court cannot find that this weighing was erroneous.

## IV.

The Court, having reviewed the record *de novo*, determines that the ALJ's decision to deny Plaintiff's application for disability insurance benefits is supported by substantial evidence. The Court therefore **OVERRULES** the Objections (ECF No. 21), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 20), **OVERRULES** the Plaintiff's statement of errors, and **DIRECTS** the Clerk to enter judgment in favor of Defendant.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE